UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KLAUBER BROTHERS, INC.,
                              Plaintiff,

                -v-

WW, LLC, YOOX NET-A-PORTER
GROUP, and DOES 1–10,
                              Defendants.

18-CV-4696 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Klauber Brothers, Inc. ("Klauber") brings this action against Defendants WW, LLC d/b/a Walter Baker ("WW") and Yoox Net-a-Porter Group d/b/a The Outnet ("Yoox"), asserting claims for copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (Dkt. No. 1 ("Compl.") ¶¶ 16–29.) WW now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asking the Court to dismiss Klauber's claims with prejudice. (Dkt. No. 37.) Klauber also moves to strike affidavits that WW submitted in support of its motion for judgment on the pleadings. (Dkt. No. 45 at 1.) For the reasons that follow, Klauber's motion is granted and WW's motion is denied.

I.      Background

The following facts are taken from the Complaint and are assumed true for the purposes of this motion.

Klauber is a New York corporation that sells lace to entities "in the fashion and apparel industries." (Compl. ¶¶ 4, 12.) Among its products, Klauber created and exclusively owns a specific "original two-dimensional artwork for purposes of lace production." (Compl. ¶ 10.) Klauber subsequently applied to register a copyright in this work, referred to as Design Number 682. (Compl. ¶¶ 10–11.)

After it began to distribute lace bearing Design Number 682 in the course of its business, Klauber discovered that other entities "were selling fabric and garments" which Klauber believes bear "illegal reproductions and/or derivations" of Design Number 682. (Compl. ¶ 13.) Klauber alleges that a blouse with the Style Number 769916-014, which was sold by Yoox and manufactured or supplied by WW, is among the infringing products it discovered. (Compl. ¶ 14.) WW refers to this blouse as the "Gwen Top," and the allegedly infringing lace design on this blouse as the "Gwen Design." (Dkt. No. 38 at 2.)

Klauber initiated this action on April 25, 2018 against Yoox, WW, and ten Doe Defendants. (Compl. ¶¶ 5–8.) The Complaint asserts one count against all Defendants for willful copyright infringement (Compl. ¶¶ 16–23) and one count against all Defendants for willful vicarious or contributory copyright infringement (Compl. ¶¶ 24–29). Yoox and WW filed their answers to the Complaint on August 14, 2018 (Dkt. Nos. 26, 29), and the Court held an initial conference in this case on September 27, 2018. After agreeing to settle the claims between them, Klauber and Yoox filed a stipulation of dismissal, and Yoox was dismissed from this case. (Dkt. Nos. 39, 42–43.)

On January 22, 2019, WW filed a motion for judgment on the pleadings under Rule 12(c). (Dkt. No. 37.) The Court subsequently stayed all discovery deadlines in the case pending the resolution of the motion for judgment on the pleadings. (Dkt. No. 41.) That motion is now fully briefed (Dkt. Nos. 38, 44, 47) and is ready for resolution.

II.     **Motion to Strike**

In support of its motion for judgment on the pleadings, WW submitted an affidavit from Walter Baker—the president of WW—along with its opening brief (Dkt. No. 37-1), and a reply affidavit from Baker with its reply brief (Dkt. No. 46). Klauber filed an objection to the opening affidavit, arguing that it lacks foundation, is inadmissible, and is "improper for consideration on

a Motion for Judgment on the Pleadings." (Dkt. No. 45 at 1–2.) In its objection, Klauber asked

the Court to strike the affidavit. (Dkt. No. 45 at 1; *see also* Dkt. No. 44 at 12.) Although

Klauber did not respond in similar fashion to the reply affidavit, the Court presumes that its

objections apply with equal force to that document as well.

"In considering a Rule 12(c) motion, 'a district court may consider the facts alleged in

the complaint, documents attached to the complaint as exhibits, and documents incorporated by

reference in the complaint.'" *Biro v. Conde Nast*, No. 11 Civ. 4442, 2014 WL 4851901, at *1

n.1 (S.D.N.Y. Sept. 30, 2014) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d

Cir. 2010)). Where materials outside the pleadings are presented on a motion for judgment on

the pleadings, Rule 12(d) permits the Court to either exclude the materials or convert the motion

into a motion for summary judgment, provided that the parties are given notice and a reasonable

opportunity to respond. *See* Fed. R. Civ. P. 12(d); *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d

Cir. 2009). "Federal courts have complete discretion to determine whether or not to accept the

submission of any material beyond the pleadings offered in conjunction with a [Rule 12(c)]

motion." *Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 396 (S.D.N.Y. 2012) (alteration in

original) (citation omitted).

The Court declines to exercise its discretion to convert WW's motion into one for

summary judgment here; accordingly, Klauber's request to strike is granted and the affidavits

from Walter Baker are excluded from the Court's consideration of the motion for judgment on

the pleadings.

III.     **Motion for Judgment on the Pleadings**

         A.     **Legal Standards**

Under Rule 12(c), "a party is entitled to judgment on the pleadings only if it has

established that no material issue of fact remains to be resolved and that [it] is entitled to

judgment as a matter of law." *Zurich Ins. Co. v. Crowley Latin Am. Servs., LLC*, No. 16 Civ. 1861, 2016 WL 7377047, at *2 (S.D.N.Y. Dec. 20, 2016) (alteration in original) (internal quotation marks omitted) (quoting *Bailey v. Pataki*, No. 08 Civ. 8563, 2010 WL 234995, at *1 (S.D.N.Y. Jan. 19, 2010)). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Citibank, N.A. v. Tormar Assocs. LLC*, No. 15 Civ. 1932, 2015 WL 7288652, at *3 (S.D.N.Y. Nov. 17, 2015) (quoting *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 427 (S.D.N.Y. 2013)). "In both postures, the district court must accept all allegations in the non-movant's pleadings as true and draw all inferences in [that party's] favor." *Id.* (alteration in original) (quoting *Gioconda Law*, 941 F. Supp. 2d at 427).

To prevail on a claim of copyright infringement, a plaintiff with a valid copyright must establish that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)). Here, WW moves to dismiss the Complaint on the basis that Klauber cannot demonstrate the second of these elements: substantial similarity.

"Although substantial similarity analysis often presents questions of fact, where the court has before it 'all that is necessary to make a comparison of the works in question,' it may rule on 'substantial similarity as a matter of law on a [Rule 12[c] motion].'" *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 290–91 (S.D.N.Y. 2012) (quoting *Peter F. Gaito*, 602 F.3d at 65). This is because "[w]hen a court is called upon to consider whether the works are substantially similar . . . 'what is required is only a visual comparison of the works.'" *Peter F.*

4

*Gaito*, 602 F.3d at 64 (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991)).

In general, "[t]he standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Id.* at 66 (internal quotation marks and brackets omitted) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)). However, when a work contains "both protectible and unprotectible elements," a court's analysis must be "more discerning." *Fisher-Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994). Under these circumstances, a court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis omitted); *see also Hamil Am.*, 193 F.3d at 102 (referring to this as the "'more discerning' ordinary observer standard").

Even under "more discerning" review, however, the Second Circuit has "disavowed any notion that '[courts] are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable.'" *Peter F. Gaito*, 602 F.3d at 66 (second alteration in original) (quoting *Knitwaves, Inc.,* 71 F.3d at 1003). Instead the inquiry is more holistic, as courts compare "the contested design's 'total concept and overall feel' with that of the allegedly infringed work," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003), guided by "good eyes and common sense," *Hamil Am.*, 193 F.3d at 102 (brackets omitted). A court's ultimate "focus" is on "whether the alleged infringer has misappropriated 'the original way in which the author has selected, coordinated, and arranged the elements of his or her work.'" *Horizon Comics Prods.,*

*Inc. v. Marvel Entm't, LLC*, 246 F. Supp. 3d 937, 941 (S.D.N.Y. 2017) (internal quotation marks omitted) (quoting *Knitwaves, Inc.*, 71 F.3d at 1004).

### B.    Discussion

WW moves to dismiss the Complaint on the basis that its allegedly infringing Gwen Design is not substantially similar to Klauber's Design Number 682.  The Court first considers which level of review governs the inquiry in this case, before turning to whether the designs lack substantial similarity.

WW contends that the "more discerning" ordinary observer standard should apply here, because certain aspects of the Design Number 682 are not protectible.  (Dkt. No. 38 at 5–6; Dkt. No. 47 at 3.)  Specifically, WW points to the fact that Design Number 682 features a row of leaves or petals, mesh background, and fringe, arguing that these elements are in the public domain.  (Dkt. No. 38 at 6.)[1]  Klauber responds that the "'more discerning test' is not appropriate here because WW fails to identify any elements in Klauber's design that are not protectible." (Dkt. No. 44 at 14.)  Specifically, Klauber argues that its "botanical elements" are "highly stylized" and thus enjoy broad copyright protection.  (Dkt. No. 44 at 6–7, 9.)  And, although not specifically disputing that mesh background and fringe are in the public domain, Klauber argues that the fact was "of no consequence."  (Dkt. No. 44 at 9.)

As WW correctly notes (Dkt. No. 47 at 1), however, in arguing that its design enjoys "broad protection" (Dkt. No. 44 at 6–10), Klauber relies on inapplicable out-of-circuit precedent rather than Second Circuit case law applying the ordinary observer or "more discerning"

---

[1]    WW also points out that the blouse featuring the lace design is a noncopyrightable "useful article," thus demonstrating that the allegedly infringed work includes non-protectible elements.  (Dkt. No. 38 at 5–6.)  But although the allegedly *infringing* design—the Gwen Design—is part of a blouse, the allegedly *infringed* design—Design Number 682—is not presented as part of a garment.  (*See* Compl. ¶ 14.)  This argument is therefore inapposite.

standards.  And more fundamentally, in arguing that its design is "wholly original" (Dkt. No. 44

at 6), Klauber seems to be confusing the principle that although a work may be entitled to

copyright protection, certain elements of the work may be nonetheless non-copyrightable.[2]

Critically, Klauber offers no argument that background mesh and fringe on lace are *not* part of

the public domain.  (Dkt. No. 44 at 9.)  Because Klauber does not dispute that these are "basic

elements of artistic creation," *Hayuk v. Starbucks Corp.*, 157 F. Supp. 3d 285, 290 (S.D.N.Y.

2016), in the context of lace design, the Court assumes that they non-protectible elements of

Design Number 682.

The Court will thus apply the "more discerning" ordinary observer standard in assessing

the substantial similarity of the two designs.  *See Klauber Bros. v. Target Corp.*, No. 14 Civ.

2125, 2015 WL 4393091, at *8 (S.D.N.Y. July 16, 2015) (applying the "more discerning"

standard to evaluate similarity of lace designs).  Putting aside the mere fact that both designs

include background mesh and fringe, then, the Court will assess whether the designs are

nonetheless substantially similar "due to protected aesthetic expressions original to the allegedly

infringed work." *Horizon Comics Prods.*, 246 F. Supp. 3d at 941 (citation omitted).[3]

---

[2]      Indeed, Klauber's argument that mesh background and fringe being in the public domain is "of no consequence" (Dkt. No. 44 at 9) is based on statements in a 1978 case from another district court that pertains to copyright validity, generally.

[3]      Importantly, however, the Court notes that the inclusion of botanical elements—such as branches and leaves—does not alone require the application of the "more discerning" standard.  As the Second Circuit has explained, the mere fact that a design features items that appear in nature—such as flowers—"does not preclude the use of the ordinary observer standard." *Hamil Am.*, 193 F.3d at 101; *see Klauber Bros. v. Russell-Newman, Inc.*, No. 11 Civ. 4985, 2013 WL 1245456, at *7 (S.D.N.Y. Mar. 26, 2013).  Rather, the "more discerning" standard is limited "to cases in which some elements of the work have been copied from the public domain." *Id.* (internal quotation marks and citation omitted).  Because WW does not allege that the specific botanical pattern in Design Number 682 was copied from the public domain, the nature of the pattern alone does not require the eyes of the "more discerning" ordinary observer.

Even applying the "more discerning" ordinary observer standard, according to Klauber, produces "at least a triable issue as to similarity" between the two designs. (Dkt. No. 44 at 14–15.) The Court agrees.

Design Number 682 (Figure A, *infra*) depicts slightly curved branches and leaves on a mesh background, surrounded by a fringed border. Specifically, the design features a repeating pattern of two branches; the first protrudes inward from the bottom of the design and is shaped in a slight concave-downward curve. The second branch protrudes inward from the top of the design and is shaped in a slight concave-upward curve. Each branch has three veined leaves sprouting from its inner-bend side, and four veined leaves from the outer-bend side. On the inner-bend side, each branch has two nubs protruding from it, from which sprout two of the leaves. Both the leaves and the branches have a thicker concentration of lace—and are thus darker in appearance—than the mesh background behind the leaves.

The border surrounding the pattern in Design Number 682 also has a thicker concentration of lace than the mesh background. This border is multi-tiered and curved. It begins closest to the center, touching the end of a branch on the bottom side, and the first leaf of the branch on the top side. The border curves outward on top and bottom until the middle of the branch, where the border contacts a leaf on both sides. The border then curves inward again until the start of the next branch.

The above description is how a discerning ordinary observer would regard the various elements and overall composition of Design Number 682. But it is also a faithful description of the Gwen Design (Figure B, *infra*), when rotated 180 degrees.[4] (*See* Dkt. No. 44 at 11.)

---

[4]    The photographs that constitute Figures A and B are taken from Exhibit A to Klauber's response brief. (Dkt. No. 44-1 at 3.)

Figure A:  Design Number 682



Figure B:  Gwen Design



Despite these similarities, WW argues that the two designs are nevertheless not substantially similar.  Specifically, WW points out that: (1) the leaves in the Gwen Design have fewer veins and less-well-defined borders, and are more randomly arranged; (2) the border of the Gwen Design is less curved in a "slight semi-circle scallop"; and (3) the designs are different colors.  (Dkt. No. 38 at 6–8; Dkt. No. 47 at 3.)[5]

But WW is only partially right in its characterization of these differences.  The leaves on the Gwen Design do appear to have less-well-defined borders and fewer veins.  But their arrangement is far from random; rather, when viewed after a 180-degree rotation, the leaves appear in the same number and directional orientation on each side of the center branches as the leaves in Design Number 682.  Furthermore, the leaves appear in substantially the same size, shape, and relative position as those in Design Number 682.

As to the border, WW is correct that the outward curve of the Gwen Design is less prominent than that of Design Number 682, and Design Number 682 has a much clearer scalloped pattern.  (*See* Dkt. No. 38 at 8 (noting the "prominent scallop pattern" of Design

---

[5]        The Court notes that much of the comparison of the two designs in WW's opening brief comes from the Walter Baker affidavit that the Court is disregarding.  (*See* Dkt. No. 38 at 6–7.)  Construing this quotation as the argument of the party rather than as evidence, the Court will consider it in ruling on WW's Rule 12(c) motion.

Number 682); Dkt. No. 44 at 12 (acknowledging that "WW's border is somewhat more compressed").)

With respect to color, WW argues that the differences between the chosen colors of the designs evidences a lack of substantial similarity. (Dkt. No. 38 at 7–8.) Klauber responds that color is irrelevant to the substantial similarity analysis in this case. (Dkt. No. 44 at 12.) The correct answer is somewhere in between. Although "a particular color is not copyrightable, the author's choice in incorporating color with other elements may be copyrighted." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 271 (2d Cir. 2001). Perhaps in part due to this distinction, in the cases on which WW relies for the importance of color in the substantial similarity analysis, courts generally focus on the similarities in color *schemes*, *i.e.*, the choice of a specific set of colors. *See Knitwaves, Inc.*, 71 F.3d at 1004; *Hamil Am.*, 193 F.3d at 102–03.

Here, Design Number 682 is presented entirely in black, whereas the Gwen Design is entirely in a shade of pink. And Klauber's creative decision to use black lace in relation to the other elements of Design Number 682 is thus different from the way the shade of pink relates to the other elements in the Gwen Design. But both designs have in common that they incorporate a single color of lace, as opposed to depicting various elements in different colors.

Ultimately, the Court is left with a handful of articulable differences between the designs: the certain details with respect to the leaves, the shape of the border, and the choice of color. In viewing the designs holistically, however—and disregarding the mesh background and fringe— these differences are slight in comparison to the abundant overall similarities between the designs, as detailed above.

In light of their numerous, prominent shared elements, a discerning ordinary observer could conclude that the two designs have the same "total concept and overall feel." *Peter F.*

*Gaito*, 602 F.3d at 66 (citation omitted).  Accordingly, the Court concludes that a "reasonable jury, properly instructed, could find that the two works are substantially similar." *Id.* at 63 (citation omitted).

## IV.    Conclusion

For the foregoing reasons, Klauber's request to strike WW's affidavits is GRANTED and WW's motion for judgment on the pleadings is DENIED.  The parties are directed to confer and submit a joint letter by July 17, 2019 proposing a schedule for the completion of discovery in this case.

The Clerk of Court is directed to close the motion at Docket Number 37.

SO ORDERED.

Dated: July 2, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge